UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITTANY SPENCER,<br><br>   *Plaintiff,*<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>   *Defendants.* | EXHIBIT A<br><br>1:14-cv-1541-CRC |

**<u>DISTRICT OF COLUMBIA'S AND JOHN AND JANE DOE OFFICERS'
MOTION TO DISMISS</u>**

The District of Columbia and John and Jane Doe officers respectfully move to dismiss the plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The memorandum in support of this motion and a proposed order are attached.

June 15, 2015         Respectfully submitted,

                 KARL A. RACINE
                 Attorney General for the District of Columbia

                 GEORGE C. VALENTINE
                 Deputy Attorney General, Civil Litigation Division

                 JONATHAN H. PITTMAN
                 Acting Assistant Deputy Attorney General, Civil Litigation Division

                 */s/ Shana L. Frost*
                 SHANA L. FROST [458021]
                 Acting Chief,
                 Civil Litigation Division Section III
                 441 Fourth Street, NW, 6th Floor South
                 Washington, DC 20001
                 (202) 724-6534
                 (202) 741-8934 (fax)
                 shana.frost@dc.gov

*/s/ Ali Naini*
ALI NAINI [998331]
Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 727-9624
(202) 730-1441 (fax)
ali.naini@dc.gov

Counsel for the District of Columbia and John and Jane Doe Officers

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITTANY SPENCER,<br><br>      *Plaintiff,*<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>      *Defendants.* | EXHIBIT B<br><br>1:14-cv-1541-CRC |

## MEMORANDUM IN SUPPORT OF DISTRICT OF COLUMBIA'S AND JOHN AND JANE DOE OFFICERS' MOTION TO DISMISS

The District of Columbia and John and Jane Doe officers move to dismiss plaintiff Brittany Spencer's complaint for failure to state a claim.[1]

## BACKGROUND

Ms. Brittany Spencer alleges that she was assaulted by an unidentified assailant on May 11, 2014, resulting in her clothes ripping and her breasts being exposed. *See* Am. Compl. ¶¶ 7-8. She states that unidentified officers of the District of Columbia Metropolitan Police Department (MPD) arrested her and her assailant; that ten minutes passed before she was placed in a police cruiser; and that because bars were closing at the time of her arrest, she was in view of a large crowd. *Id.* ¶¶ 9-11. Ms. Spencer further alleges that she asked the police officers if they could cover her, and that they did not. *Id.* ¶ 13. Once she was in the cruiser, she alleges, the officers did not attempt to obscure her from external view. *Id.* ¶ 16. Ms. Spencer states that one officer

---

[1] Although the Doe defendants have not been identified, counsel for the District appear on their behalf, for the limited purposes of this motion, to dismiss the claims against them because those claims are barred as a matter of law, regardless of the actual identity of the Doe officers.

informed her that a female officer would fix her shirt. *Id.* ¶ 17. She further alleges that the officers did not accept her friend's offer to provide her a jacket. *Id.* ¶ 19.

Later, Ms. Spencer states, a female police officer did adjust her shirt so that her nipples were no longer exposed. *Id*. ¶ 15. This adjustment allegedly became undone during the ten-minute ride to the police station, and was not redone by the female officer, who allegedly was sitting next to Ms. Spencer during the ride. *Id.* ¶¶ 23-26. According to the amended complaint, Ms. Spencer was placed in a holding cell with another female for about three hours and initially was not given anything to cover herself. *Id.* ¶ 27. After some time, however, the officers accepted the offer of Ms. Spencer's friend, who had accompanied them to the police station, to give her jacket to Ms. Spencer. *Id.* ¶ 31.

Ms. Spencer's amended complaint presents contains three claims. First, she claims that the alleged "actions or omissions" of the Doe officers constitute intrusion upon seclusion. *Id.* ¶¶ 35-38. This claim is brought against the District of Columbia only, not the individual officers. *See id.* ¶ 40. Second, she claims her arrest violated the Fourth Amendment. Id. ¶ 42-43. Ms. Spencer does not challenge the propriety or legality of her arrest. Rather, she asserts that "[b]y requiring [her] to remain bare-breasted for no legitimate law enforcement purpose," the officers "carried out [her] arrest and detention . . . in an unreasonable manner." *Id.* In addition, Ms. Spencer claims she "had a clearly established constitutional right to privacy which was violated [by] the manner in which she was arrested and detained." *Id.* ¶ 43. These two claims are brought against the unidentified individual officers only and not the District. *Id.* ¶¶ 42-43.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). The Supreme Court has set forth a two-pronged test to determine whether a complaint's factual allegations meet this standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). First, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Next, once a court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. For a complaint to be facially plausible, its factual allegations must support "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal quotation marks and citations omitted). The complaint's factual allegations "must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." *Id.* at 680 (internal quotation marks and citations omitted).

## ARGUMENT

The Court should dismiss Ms. Spencer's intrusion-upon-seclusion claim (Count 1) because she fails to state a claim. In addition, the complaint's factual allegations neither state any claim cognizable under the Fourth Amendment, nor fall under any interest protected by the right to privacy. For this reason, the Court should dismiss her constitutional claims (grouped under Count 2). The Court may additionally dismiss the constitutional claims on qualified immunity grounds because Ms. Spencer's allegations do not evidence violation of any clearly established constitutional right.

I.  **The Amended Complaint Fails to State a Claim for Intrusion Upon Seclusion, Because Her Shirt Was Torn Before Her Arrest, and the Doe Officers Did Not Commit Any Intrusions, and Her Upper Body Was Not "Secluded."**

Ms. Spencer fails to state a claim for intrusion upon seclusion because the Doe officers did not commit any affirmative acts constituting intentional intrusion, and because her shirt was already torn at the time of her arrest. To state a claim for intrusion upon seclusion, a plaintiff must show:

> (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself or herself, or into his or her private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person.

*Danai v. Canal Square Assocs.*, 862 A.2d 395, 400 (D.C. 2004). The intrusion need not be physical; it must, however, be intentional. *See id.* at 399-400. Regarding the second element, the privacy interest which has been invaded must indeed have been private for a plaintiff to establish liability: "where the defendant did not actually delve into a plaintiff's private concerns, or where the plaintiff's activities were already known or public, there can be no liability." *Wolf v. Regardie*, 553 A.2d 1213, 1218 (D.C. 1989) (citing *Dresbach v. Doubleday & Co.,* 518 F. Supp. 1285, 1287, 1290 (D.D.C.1981); *Bisbee v. John C. Conover Agency, Inc.,* 452 A.2d 689, 691 (N.J. 1982); W. PROSSER, HANDBOOK ON THE LAW OF TORTS § 117, at 808-09 (4th ed. 1971)).

"Even in a public place . . ., there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters." *Helton v. United States*, 191 F. Supp. 2d 179, 181 n.2 (D.D.C. 2002) (quoting Restatement (Second) of Torts (1977), Comment c to § 652 B). By implication, private matters that are in view of the public do not satisfy the

requirement that an intrusion be into "private or secret concerns." The second element asks not whether a plaintiff had a reasonable expectation of privacy in the matter at hand (an issue the third element of the tort covers), but whether it was already public or not. *See, e.g.*, *id.* at 182 (noting that second element was met since it was "apparent that plaintiffs ha[d] secluded their naked bodies within their clothes").

The District of Columbia Court of Appeals has not yet addressed the tort of intrusion upon seclusion in the context of bodily privacy. Other courts have recognized that "physical or visual intrusions upon a person's body" can potentially constitute intrusion upon seclusion. *Id.* at 181-82. Uniformly, these cases have involved affirmative conduct that comprises an intrusion. *See, e.g.*, *id.* at 181-83 (unjustified strip searches constitute intrusion upon seclusion); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992), *as amended* (May 29, 1992) (potential claim if employer monitors employee passing urine during collection of urine sample); *Hidey v. Ohio State Highway Patrol*, 689 N.E.2d 89, 92-93 (Oh. Ct. App. 1996) (officer who, in drug search, pulled plaintiff's pants and underwear away from her body and shined a flashlight down her pants, and who forced plaintiff to expose her breast, intruded upon her seclusion); *see also Helton*, 191 F. Supp. 2d at 181-82 (collecting cases).

Here, the amended complaint fails to state a claim for intrusion upon seclusion for two reasons. First, the Doe officers did not act in any affirmative way to intrude upon Ms. Spencer's privacy concerns. The amended complaint states that Ms. Spencer's shirt was already torn in front of a presumably crowded nightclub on H Street, NE, at the time of her arrest. Necessarily, then, the Doe officers cannot have committed an intentional "physical intrusion" or "some other form of investigation or examination." It is telling that, in her original complaint, Ms. Spencer

alleged *negligence*, and not an intentional tort, against the Doe officers, for the same conduct at issue here. *See* Compl. ¶¶ 20-26.

Second, because Ms. Spencer's shirt was torn outside in front of the nightclub prior to her arrest, her upper body was exposed before any action by the Doe officers. As a result, she cannot meet the second element of intrusion upon seclusion. Without question, Ms. Spencer possesses an expectation of privacy in clothing her upper body; however, she cannot state a claim against the Doe officers because her upper body was not "secluded" with clothing at the time of her arrest.

At base, Ms. Spencer's claim rests on the contention that the Doe officers' failure to fix her shirt constitutes intrusion, but this argument is contrary to the case law. For these reason, she fails to state a claim for intrusion upon seclusion. And because she cannot state a claim against the Doe officers, she cannot hold the District vicariously liable for their alleged conduct.

**II.** **The Court Should Dismiss Ms. Spencer's Constitutional Claims (Count 2) Because She Does Not State a Claim Under Either the Fourth Amendment or the Right to Privacy, and Because the Doe Officers Are Entitled to Qualified Immunity.**

**A. Ms. Spencer's Complaint Fails to State a Claim Under the Fourth Amendment Because the Officers Did Not Have a Constitutional Duty to Allow Her to Cover Herself When She Was Arrested With Her Clothes Already Torn.**

Ms. Spencer claims that her "arrest and seizure . . . was objectively unreasonable and therefore unconstitutional because the [officers] refused to permit [her] to cover her breasts." Compl. ¶ 28. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The "'basic purpose'" of the amendment is "'to safeguard privacy and security of individuals against arbitrary invasions by government officials.'" *Berger v. New York*, 388 U.S. 41, 53 (1967) (quoting *Camara v. City of San Francisco*, 387 U.S. 523, 528)). Under the Fourth

Amendment, a warrantless arrest is reasonable if the arresting officer has probable cause to believe a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Ms. Spencer does not allege that the officer who detained her lacked probable cause; nor does she allege that any of the officers at the scene used excessive force. Instead, she claims that her arrest was "objectively unreasonable" because the officers "refused to permit [her] to cover her breasts." Thus, for her to proceed on her claim, the Fourth Amendment must impose on officers a duty to allow a detainee, whose clothing was torn before she was arrested, to cover herself.

The Defendants' research has revealed no case holding that the Fourth Amendment imposes such a duty. Moreover, Ms. Spencer's assertion that the Fourth Amendment gives her a right to having the police cover her, or allow her to do it herself, has no basis in Fourth Amendment jurisprudence. As the Supreme Court has explained many times, the Fourth Amendment was ratified to guarantee that citizens will "'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant." *Stanford v. Texas*, 379 U.S. 476, 481 (1965) (quoting U.S. Const. amend. IV). The Fourth Amendment was explicitly written in reaction to the "writs of assistance [that] had given customs officials blanket authority to search where they pleased," *Stanford*, 379 U.S. at 481, and its "'core'" purpose remains securing "'one's privacy against arbitrary intrusion by the police,'" *Berger*, 388 U.S. at 41 (quoting *Wolf v. Colorado*, 338 U.S. 25, 27 (1949)). The Fourth Amendment does not provide an affirmative right like the one Ms. Spencer seeks. Because Ms. Spencer's claim depends on a purported right the Fourth Amendment does not provide, the Court should dismiss her Fourth Amendment claim.

### B. Ms. Spencer's Complaint Does Not State a Claim for a Violation of Her Constitutional Right to Privacy.

Ms. Spencer claims that the MPD officers' alleged failure to allow her to cover herself up violated her constitutional right to privacy. Although the Constitution does not expressly articulate a right to privacy, it is well-established that the right does exist in the Due Process Clause of the Fourteenth Amendment. *See Roe v. Wade,* 410 U.S. 113, 152-53 (1973). The Fourteenth Amendment does not apply to the District of Columbia because the District is, regrettably, not a state, but the rights protected by the Fourteenth Amendment's Due Process Clause are also protected by the Fifth Amendment's Due Process Clause, which applies to the District. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) ("it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government"); *Malinski v. New York*, 324 U.S. 401, 415 (1945) (Frankfurter, J., concurring) ("To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection.").

The Supreme Court has explained that the right to privacy encompasses two types of interests. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Dep't of Housing & Urban Dev.*, 118 F.3d 786, 791 (D.C. Cir. 1997). "'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Id.* (quoting *Whalen v. Roe*, 429 U.S. 589, 598 (1977)).

Although many circuits have recognized a constitutional right to nondisclosure of personal information, more precisely characterized as a right to confidentiality, the D.C. Circuit has expressed "grave doubts" concerning the existence of such a right, finding the relevant Supreme Court precedent to be "Delphic" and equivocal. *See id.* The D.C. Circuit has not, however, categorically rejected the existence of this right. *See id.* at 793.

Assuming Ms. Spencer has a constitutional right to confidentiality does not help her case, though, because the right to confidentiality protects only against the government *affirmatively disclosing* protected personal information to the public: the right to confidentiality is the right "not to have an individual's private affairs made public by the government." *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir. 1980); *see Whalen*, 429 U.S. at 602 (noting that disclosure of medical information to private entities like doctors may be "unpleasant" but is not a constitutional concern); *Am. Fed'n of Gov't Emps.*, 118 F.3d at 793 (noting that privacy interest "is significantly less important where the information is collected by the government but not disseminated publicly"); *Doe v. Webster,* 606 F.2d 1226, 1238 n.49 (D.C. Cir. 1979) (suggesting that a right to privacy could be violated by the government's collection *and dissemination* of criminal information); *Utz v. Cullinane,* 520 F.2d 467, 482 n.41 (D.C. Cir. 1975) (noting that a right to privacy could be violated "by the dissemination" of arrest data for purposes not related to law enforcement); *see also, e.g.*, *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000) (plaintiff's right to keep his HIV-positive condition confidential violated by police officer's disclosure).

Ms. Spencer's complaint indicates that her clothing was torn prior to her arrest. Assuming that there is a right to confidentiality in this circuit, and assuming the exposure of Ms. Spencer's breasts would constitute the sort of personal information the right protects, Ms. Spencer still could not state a claim because the complaint makes clear that (1) her dress was torn during the assault, not as a result of any action by MPD officers, and (2) no MPD officers took any action to expose Ms. Spencer publicly. To the contrary, the complaint indicates that the officers placed Ms. Spencer in a police vehicle after her arrest, and had a female officer adjust Ms. Spencer's shirt so her nipples would not be exposed. In other words, Ms. Spencer does not

allege that MPD officers disclosed any personal information, and, on these allegations, Ms. Spencer's complaint does not show a violation of her right to confidentiality.

The second interest protected by the right to privacy regards autonomy in making personal decisions, including decisions involving marriage, contraception, and reproduction. *See Whalen*, 429 U.S. at 599-600; *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684-85 (1977). This interest is not implicated by the allegations in the complaint and is therefore not at issue here. Because the complaint's factual allegations do not state any claim protected by the right to privacy, the Court should dismiss Ms. Spencer's privacy claim.

### C. The Court Should Also Dismiss the Constitutional Claims Because the Officers Are Entitled to Qualified Immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Traditionally, courts have approached the qualified immunity analysis through a two-step inquiry mandated in *Saucier v. Katz* [533 U.S. 194 (2001)], asking, first, whether the alleged facts show that the individual's conduct violated a statutory or constitutional right, and, second, whether that right was clearly established at the time of the incident." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). However, the two-step *Saucier* inquiry "should no longer be regarded as mandatory." *Id.* "Rather, a district court judge now retains discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The rights Ms. Spencer claims under the Fourth Amendment and right to privacy are speculative, and not at all well-established. Thus, regardless of the identity of the actual MPD officers involved in the arrest and detention of Ms. Spencer, the Doe officers are entitled to qualified immunity and the dismissal of Ms. Spencer's constitutional claims.

## CONCLUSION

For these reasons, the Court should dismiss Ms. Spencer's complaint with prejudice.

June 15, 2015

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

JONATHAN H. PITTMAN
Acting Assistant Deputy Attorney General, Civil Litigation Division

*/s/ Shana L. Frost*
SHANA L. FROST [458021]
Acting Chief,
Civil Litigation Division Section III
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
(202) 741-8934 (fax)
shana.frost@dc.gov

*/s/ Ali Naini*
ALI NAINI [998331]
Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 727-9624
(202) 730-1441 (fax)
ali.naini@dc.gov

Counsel for the District of Columbia and John and Jane Doe Officers

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITTANY SPENCER,<br><br>    *Plaintiff,*<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants.* | EXHIBIT C<br><br>1:14-cv-1541-CRC |

## ORDER

**UPON CONSIDERATION** of the District of Columbia's and John and Jane Doe officers' Motion to Dismiss, the memorandum in support, any opposition and reply thereto, and the entire record, it is hereby

**ORDERED** that the Defendants' motion is **GRANTED,** and

**ORDERED** that the complaint is **DISMISSED** with prejudice on this _____ day of _____, 2015.

 

_____
Christopher R. Cooper
UNITED STATES DISTRICT JUDGE

Copies to:

Jeff Light, Esq.
*Counsel for Plaintiff*

Ali Naini, Esq.
*Counsel for Defendants*