**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRITTANY SPENCER**, <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA, <u>et al.</u>**, <br><br> Defendants. | Case No. 14-cv-01541 (CRC) |

**<u>MEMORANDUM OPINION</u>**

An early-hours brawl with a fellow nightclub patron left Brittany Spencer's shirt torn and her breasts exposed to peering onlookers. After the police arrived and detained both combatants, Spencer alleges, they required her to remain topless at the scene and later at the station, in full view of numerous officers and her cellmate. Believing her modesty offended, she filed suit against the arresting officers for effecting an unreasonable seizure under the Fourth Amendment, and against their employer, the District of Columbia, for committing the common-law tort of intrusion upon seclusion. The Defendants now move to dismiss Spencer's Amended Complaint. Finding that Spencer has properly pled both claims, the Court will deny the motion.

**I.   Background**

The following facts are drawn from Spencer's Amended Complaint and a Metropolitan Police Department ("MPD") report of the incident provided by the Defendants, of which the Court takes judicial notice. See In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig., 45 F. Supp. 3d 14, 20 n.1 (D.D.C. 2014) (on a motion to dismiss, noting that a "police report is a public record subject to judicial notice"); Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) ("[P]ublic records [are] subject to judicial notice on a motion to dismiss."). The

Court, as it must, accepts the Complaint's factual allegations as true for purposes of this motion. See Kaempe, 367 F.3d at 963.

At approximately 3:00 a.m. on May 11, 2014, MPD officers responded to an altercation in the lobby of a downtown nightclub. There they encountered Spencer and another female patron in a fist fight. After struggling to separate them, the officers arrested both pugilists on simple assault charges. Spencer claims that the other woman instigated the assault and ripped her shirt in the process, exposing her breasts. Callous to her condition, Spencer alleges, the officers handcuffed her and "required her to remain standing outside, bare-breasted, for approximately ten minutes, in view of [the] large crowd" forming on the sidewalk. Am. Compl. ¶ 10. Spencer implored the officers to cover her breasts, but they refused.

Officers eventually put Spencer in a police cruiser, where, through the window, her breasts remained visible to the officers and the crowd on the sidewalk. A friend of Spencer's on the scene repeatedly asked the officers to cover Spencer's breasts. One responded that a female officer would do so, but after several minutes passed, the friend asked if she could provide Spencer a jacket. The officers refused. Some twenty or thirty minutes later, just before the cruiser departed for the station, a female officer adjusted Spencer's shirt to provide at least some degree of coverage. When this makeshift adjustment came undone, the female officer seated next to Spencer in the cruiser did nothing to fix it.

Upon arriving at the police station, officers escorted Spencer to a cell, where she was held for "several hours with no access to water, nothing to cover her breasts, and no shoes." Id. ¶ 28. She remained exposed to her cellmate as well as other officers at the station. Id. After several hours and repeated requests from Spencer's friend, the officers allowed Spencer to put on a jacket. Id. ¶ 31.

2

Spencer filed a Complaint against the District of Columbia and unnamed John and Jane Doe Officers on September 9, 2014.  After a motion to dismiss by Defendants, she filed an Amended Complaint on May 25, 2015, alleging that the District of Columbia is liable for the common-law tort of intrusion upon seclusion (Count I), and that the officers are individually liable under 42 U.S.C. § 1983 for subjecting her to an unreasonable seizure in violation of the Fourth Amendment (Count II).  Defendants filed a second motion to dismiss on June 22, 2015.  The Court heard oral argument on the motion on January 15, 2016.

## II.     Standard of Review

On a Rule 12(b)(6) motion for failure to state a claim, a court must assess whether the complaint alleges sufficient facts that, accepted as true, state an entitlement to relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  A complaint's factual allegations must be construed "in the light most favorable to the plaintiff."  Hammel v. Marsh USA Inc., 79 F. Supp. 3d 234, 238 (D.D.C. 2015).  Yet "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Harris v. Dist. of Columbia Water & Sewer Auth., 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).  A complaint that presents merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

**III.     Analysis**

   A.  <u>Section 1983 Claim</u>

      1.  <u>Fourth Amendment Violation</u>

Title 42, section 1983 of the U.S. Code authorizes lawsuits to redress violations of constitutional or statutory rights by persons acting under color of law.  Spencer alleges that, by forcing her to remain exposed after her arrest, MPD officers violated the Fourth Amendment's prohibition of "unreasonable searches and seizures" and thus are liable under § 1983.  Fourth Amendment challenges to police conduct during and immediately preceding arrests brought under § 1983 often involve allegations of excessive force.  <u>Cf.</u> <u>Graham v. Connor</u>, 490 U.S. 386, 399 (1989) (Blackmun, J., concurring in part and concurring in the judgment) ("[T]he Fourth Amendment is the primary tool for analyzing claims of excessive force in the prearrest context.").  As Spencer observes, it is "somewhat awkward to conceptualize such an act or failure to act as 'excessive force' under the Fourth Amendment."  Pl.'s Opp'n Mot. Dismiss 4 (quoting <u>Estate of Phillips v. City of Milwaukee</u>, 123 F.3d 586, 595 (7th Cir. 1997)) (internal quotation mark omitted).  The Supreme Court has explained, however, that "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975).

In determining whether a seizure violates the Fourth Amendment, courts weigh the extent of the intrusion against the law-enforcement interest served by its manner and duration.  <u>See</u> <u>L.A. Cnty. v. Rettele</u>, 550 U.S. 609, 613–14 (2007) (per curiam).  Although typical search-and-seizure cases challenge intrusions upon personal liberty as opposed to privacy, the Supreme Court has analyzed police intrusions into bodily privacy using the same balancing test.  <u>See</u> <u>id.</u> at 615.  In <u>Rettele</u>, for example, the Los Angeles County Sheriff's Department obtained a warrant to search

a house where it expected to find suspected participants in an identity-theft ring. The suspects were African-American, but, as it happened, they had sold the house to a white couple a few months earlier. The officers executed the warrant early in the morning and found the startled couple naked in bed. Despite the couple's protests, the officers ordered them out of bed and prohibited them from covering themselves with blankets or robes. See id. at 610–12. The officers held the couple at gunpoint for approximately two minutes before permitting them to dress. Upon realizing their mistake, the officers apologized and left. See id. at 611.

The Supreme Court upheld the seizure. Requiring the couple to remain briefly unclothed was warranted, the Court reasoned, because blankets and bedding can conceal weapons, and the fact that the couple was white did not eliminate the possibility that the real suspects were elsewhere in the house. See id. at 614–15. The Court emphasized, however, that the officers were not "free to force [the couple] to remain motionless and standing for any longer than necessary," noting its earlier recognition that "'special circumstances, or possibly a prolonged detention,' might render a [detention] unreasonable." Id. at 615 (quoting Michigan v. Summers, 452 U.S. 692, 705 n.21 (1981)). Central to the Court's conclusion was that there was "no accusation that the detention . . . was prolonged" or that the officers "prevented [the couple] from dressing longer than necessary to protect their safety." Id. Indeed, one of the two "was unclothed for no more than two minutes, and [the other] for only slightly more time than that." Id.

Spencer's Amended Complaint tracks the reasoning of Rettele. She alleges that forcing her to remain topless for "twenty to thirty minutes" outside the nightclub, Am. Compl. ¶ 21, and "several hours" at the station, id. ¶ 28, served no legitimate law-enforcement purpose. Defendants do not contend otherwise, at least at this stage of the proceedings. They argue,

rather, that because the officers did not cause Spencer's state of undress in the first place, they had no duty to assist her and therefore cannot be liable for violating her Fourth Amendment rights. See Defs.' Mot. Dismiss 9–10. And Rettele does not control, they suggest, because the couple there was in bed and under the covers when the officers first encountered them and became exposed only when they were ordered to stand up. Unlike here, therefore, the officers affirmatively caused the couple's exposure.

Defendants' argument misses the mark. First, it begins from a faulty premise. An officer's general duty to assist an arrestee experiencing harm can arise even where the officer was not the source of the harm. See Ortiz v. City of Chicago, 656 F.3d 523, 538–39 (7th Cir. 2011) (noting—where there was no allegation that officers caused the plaintiff's health condition, which required medical attention—that officers' failure to provide a pretrial detainee "medical care in the face of a serious health risk [can] constitute[] deliberate indifference" in violation of the Fourth Amendment); Boring v. Kozakiewicz, 833 F.2d 468, 471–74 (3d Cir. 1987) (determining—where there was similarly no allegation that officers caused or exacerbated the plaintiffs' health conditions or injuries requiring medical attention—whether law enforcement officers had breached their duty under the Due Process Clause to "provide appropriate medical care" to pretrial detainees, id. at 471 (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983))).

More importantly, Defendants fail to distinguish Rettele. While the police in Rettele did, in a sense, cause the plaintiffs' exposure by ordering them out of bed, the Supreme Court assigned little if any significance to that fact. Rather, the Court emphasized that the officers were not "free to force [the couple] to *remain* motionless and standing for any longer than necessary," and that there was "no allegation that the deputies *prevented [them] from dressing*

6

any longer than necessary to protect [officer] safety." Rettele, 550 U.S. at 615 (emphases added).  In other words, the Court focused on how long the plaintiffs were made to remain exposed after the officers had secured the scene, not on why they were undressed to begin with. Rettele thus confirms that police violate the Fourth Amendment when they force a detainee to remain unclothed and exposed for longer than necessary to achieve a legitimate law enforcement purpose.  Because Spencer's Amended Complaint alleges that the officers did just that, and the District offers no legitimate law enforcement purpose to rebut Spencer's allegations, she has pled a plausible violation of the Fourth Amendment.

### 2. Qualified Immunity

Defendants next argue that, even if Spencer has alleged a valid Fourth Amendment violation, the officers enjoy qualified immunity from suit because the right that Spencer claims was violated was not clearly established at the time of the alleged violation.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right.'" Id. (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)).  And while "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted).

Defendants assert in conclusory fashion that "Ms. Spencer does not identify a clearly established constitutional right a reasonable officer would have known of[.]"  Defs.' Reply 4.

But as noted above, Rettele could not have been much clearer: The officers were not "free to force [the unclothed couple] to remain motionless and standing for any longer than necessary" or to "prevent[] [them] from dressing any longer than necessary to protect [officer] safety." 550 U.S. at 615. The meaning of the Court's articulation of the right is "beyond debate." Mullenix, 136 S. Ct. at 308 (quoting al-Kidd, 563 U.S. at 741) (internal quotation mark omitted).

This Court is not alone in finding that detainees have a clearly established right not to be subjected to longer-than-necessary bodily exposure at the hands of police. Confronted with similar facts, the court in Brown v. City of New York, No. 11 Civ. 1068, 2013 WL 491926 (S.D.N.Y. Feb. 8, 2013), looked to Rettele and other Supreme Court precedents to determine that a plaintiff who had been left unclothed "for at least forty minutes" during a search "had a clearly established right not to be detained in the nude for longer than necessary to achieve valid law enforcement purposes." Id. at *5. The court went on to deny summary judgment to the government on the plaintiff's § 1983 claim that her seizure violated the Fourth Amendment, reasoning that a jury could find the seizure unreasonable because the plaintiff, much like Spencer has alleged, "was forced to remain standing and undressed for approximately 40 minutes, during which time *her numerous requests to cover herself were denied*," and, "*for at least part of the detention her arms were handcuffed behind her so that she could not cover herself*." Id. at *7 (emphases added). The officers in Brown also had not "articulated why [their] safety, or any other valid law enforcement objective, required such prolonged forced nakedness." Id.; see also Thornton v. Fray, 429 Fed. App'x 504, *2, *5 (6th Cir. 2011) (unpublished) (rejecting qualified immunity for officers who had forced a suspect "to sit on the floor with the bottom half of her body fully exposed" for approximately two hours and refused her requests to cover herself); Hutchinson v. Lemmon, 436 Fed. App'x 210, 216 (4th Cir. 2011) (unpublished) (same for

officers who "kept [a suspect] naked for a period substantially longer than necessary to secure the home and protect the officers' safety").

The Supreme Court's recent decision in Rodriguez v. United States, 135 S. Ct. 1609 (2015), buttresses the Court's conclusion that the right Spencer identifies is clearly established. Rodriguez reiterates a broader principle underlying Rettele—that an intrusion by law enforcement must be limited to "the time reasonably required to complete th[e] mission" of that intrusion. 135 S. Ct. at 1612 (alteration in original) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). The case concerned whether a dog-sniff search conducted after the completion of a traffic stop violated the Fourth Amendment. The Court concluded that it did, reasoning that "a police stop exceeding the time needed to handle the matter for which the stop was made" constitutes an "unreasonable seizure[]." Id. And though decided after the incident underlying this case occurred, Rodriguez explained that the Court's prior decisions in Arizona v. Johnson, 555 U.S. 323 (2009), and Caballes compelled its result. Those cases "cautioned that a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket," Rodriguez, 135 S. Ct. at 1614–15 (quoting Caballes, 543 U.S. at 407), and admonished that a "seizure remains lawful only 'so long as [unrelated intrusions] do not measurably extend the duration of the stop,'" id. at 1615 (quoting Johnson, 555 U.S. at 333). These cases capture a broader lesson from Rettele—that the Fourth Amendment requires law enforcement officers to limit the intrusiveness of seizures to the level necessary to effectuate legitimate law enforcement purposes.

Given Rettele's firm grounding in the Supreme Court's Fourth Amendment jurisprudence and the particularity with which it addresses the duration of bodily exposure during a seizure, a reasonable officer in the position of the MPD officers here would have known that the conduct

alleged in the Amended Complaint violated the Fourth Amendment. And because the <u>Rettele</u> Court makes plain that it would not have held the search and seizure reasonable if the officers had detained the disrobed couple for any longer than necessary for officer safety, <u>Rettele</u> clearly established a right not to remain exposed beyond the point at which a legitimate law enforcement purpose is served. As Defendants do not even argue that the officers were serving a legitimate law enforcement purpose by forcing Spencer to remain exposed for hours following her arrest, as she alleges, the Court will deny the motion to dismiss Spencer's § 1983 claim.

>B. <u>Intrusion-upon-Seclusion Claim</u>

Spencer relies on the same allegations described above to support her claim against the District of Columbia for the common-law tort of intrusion upon seclusion. The District of Columbia Court of Appeals has identified three elements of the tort:

> (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself [or herself], or into his [or her] private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person.

<u>Danai v. Canal Square Assocs.</u>, 862 A.2d 395, 400 (D.C. 2004) (alterations in original) (quoting <u>Wolf v. Regardie</u>, 553 A.2d 1213, 1217 (D.C. 1989)). The District does not contest that Spencer has satisfactorily alleged the third element—that being forced to remain unclothed "would be highly offensive to an ordinary, reasonable person." <u>Id.</u> It challenges the sufficiency of Spencer's allegations concerning only the first two elements.

As to the first element, "[t]he types of invasion intrinsic" in this tort "are those such as harassment; peeping through windows or into other locations in which a plaintiff has chosen to seclude himself; opening personal mail; eavesdropping on a private conversation; entering a plaintiff's home without permission or searching his or her belongings; [and] examining a

plaintiff's private bank account." Wolf, 553 A.2d at 1217–18 (citations omitted).  Spencer's allegations do not fit squarely within these garden-variety invasions.  Spencer alleges that the officers "intruded" on her bodily privacy—or, put differently, "'interfer[ed]' with [her] ability to cover herself," Pl.'s Opp'n Mot. Dismiss 16 (first alteration in original) (quoting Wolf, 553 A.2d at 1217)—by forcing her to remain unclothed after securing the crime scene.  Echoing its defense to Spencer's Fourth Amendment claim, the District responds that the officers could not have intruded on Spencer's privacy because they did not affirmatively cause her exposure; her shirt was already torn when they encountered her.  Defs.' Mot. Dismiss 5–6.

      The parties have not cited any D.C. case law applying the tort of intrusion upon seclusion to a fact pattern in which the would-be tortfeasor did not affirmatively invade the plaintiff's privacy.  In Hill v. McKinley, 311 F.3d 899 (8th Cir. 2002), however, the Eighth Circuit interpreted an analogous Iowa common-law formulation of the tort to permit liability under circumstances similar to those presented here.  The police in Hill arrested a female plaintiff for public drunkenness and brought her to the station.  After she assaulted an officer and refused to stop kicking the door of her jail cell, officers decided to place the plaintiff in a padded cell.  Jail policy dictated that prisoners in the padded cell had to wear either a paper gown or nothing at all.  The plaintiff alleged that she was not offered a paper gown and that one of the officers observed her removing her clothing.  See id. at 901.  Some time later, following a shift change, the officers who had required the plaintiff to disrobe, along with a different set of officers who had just begun their shift, moved her from the padded cell to another part of the jail where she could be placed on a restraining board.  In doing so, the officers escorted her down a hallway, while still naked, and strapped her to the board face-down with her legs spread.  See id. at 901–02.  The court upheld the jury's verdict of liability as to *both* sets of officers, focusing primarily on the

11

intrusion after the plaintiff was already naked. See id. at 906 ("We cannot say that as a matter of law the defendants' actions were not an unreasonable and highly offensive intrusion upon Hill's privacy. There is no question that being marched down a hallway by several persons, including members of the opposite sex, and then being strapped face-down to a board in a spread-eagle position, all while completely naked, would be considered highly offensive by ordinary persons."). The Court is persuaded by the Eighth Circuit's reasoning in Hill. Even though the defendant officers may not have caused Spencer's exposure in the first place, Spencer has satisfactorily pled that they "intruded" on her privacy *after* the initial exposure by forcing her to remain unclothed, in view of others, for longer than necessary to satisfy legitimate law enforcement objectives.[1]

With respect to the second element—that the intrusion be into "a place where the plaintiff has secluded himself, or into his private or secret concerns," Danai, 862 A.2d at 400—the District contends that because Spencer's shirt had been ripped before the officers arrived, her exposed breasts were not "private or secret" when they encountered her, Defs.' Mot. Dismiss 6. The Court disagrees. As Spencer points out, the D.C. Court of Appeals has incorporated the legal standard for intrusion upon seclusion from the Restatement (Second) of Torts § 652B. See Danai, 862 A.2d at 399–400. One of the illustrative comments accompanying that section of the

---

[1] Defendants also contend that because Spencer's shirt was already torn when they arrived, her claim rests on, at most, their failure to act, which cannot form the basis of an *intentional* tort such as intrusion upon seclusion, but rather would more aptly support a negligence claim. See Defs.' Mot. Dismiss 5–6. Even if Defendants' actions are properly characterized as omissions rather than affirmative acts, the Supreme Court has acknowledged that omissions can constitute intentional torts. See Millbrook v. United States, 133 S. Ct. 1441, 1443 (2013) (discussing a provision of the Federal Tort Claims Act that "extends the waiver of sovereign immunity to claims for six intentional torts . . . that are based on the '*acts or omissions* of investigative or law enforcement officers'" (emphasis added) (quoting 28 U.S.C. § 2680(h))).

Restatement clarifies that there is no "liability for observing [a plaintiff] or even taking his photograph while he is walking on a public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." Id. cmt. c. But, the comment goes on to explain, "[e]ven in a public place, . . . there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters." Id. The comments section offers two hypotheticals to further elucidate this point. First: "A is drunk on the public street. B takes his photograph in that condition. B has not invaded A's privacy." Id. cmt. c., illus. 6. And second:

> A, a young woman, attends a "Fun House," a public place of amusement where various tricks are played upon visitors. While she is there a concealed jet of compressed air blows her skirts over her head, and reveals her underwear. B takes a photograph of her in that position. B has invaded A's privacy.

Id. cmt. c., illus. 7. So, our unsuspecting fun-house visitor is already exposed, independent of the quick-draw paparazzo, yet his click of the lens invades her privacy. By contrast, the drunk's public exposure is left unremedied because only he is responsible for his intoxication.[2]

Spencer's allegations track the fun-house example. She secluded herself with clothing, but was involuntarily exposed by her alleged assailant. The officers, like the photographer, did nothing to cause Spencer's initial exposure, yet are alleged to have taken some subsequent actions that intruded upon her secluded areas. These examples illustrate two principles. First, a plaintiff's body may remain "secluded" for purposes of this tort even if it is exposed by forces beyond his or her control. And second, a tortfeasor need not bring about the exposure in order to

---

[2] While the Court takes these hypotheticals at face value, one cannot help but ponder which of the Restatement's protagonists is more blameworthy for their exposed state: the giddy visitor to a fun house known for playing tricks on "unsuspecting" victims, or the lost soul who stumbles onto the street after a bender at the corner tavern?

be liable for invading a plaintiff's privacy and thus intruding upon her seclusion.

The District attempts to distinguish the Fun House illustration by noting that the photographer, unlike the officers here, affirmatively intruded upon the privacy of the subject by taking her photograph.  See Defs.' Reply 5.  But this point goes to the intrusion element of the tort, which the Court discussed above.  The purpose of the hypothetical is to show that the privacy element can be satisfied where the plaintiff becomes exposed through no fault of her own.  Because Spencer has alleged precisely that, she has properly pled the second element of this tort.[3]

### IV. Conclusion

For the foregoing reasons, the Court will deny Defendants' motion to dismiss.  An order accompanies this memorandum opinion.

                                                                  CHRISTOPHER R. COOPER
                                                                  United States District Judge

Date:   March 4, 2016

---

[3] The D.C. Court of Appeals's reasoning in Danai further bolsters Spencer's contention that, despite being exposed, her breasts remained her private concerns.  The Danai court considered an intrusion-upon-seclusion claim based on the defendant's recovery of a discarded letter and use of its contents in an unrelated lawsuit.  See Danai, 862 A.2d at 397.  The court analogized to the Fourth Amendment context, asking whether the plaintiff had a reasonable expectation of privacy in the information the defendant uncovered.  It concluded that because the plaintiff had thrown the letter away and made no arrangements to safeguard her trash, she did not have such a reasonable expectation.  See id. at 403.  Unlike that plaintiff, Spencer did not fail to protect her privacy.  And it is well established that there is a reasonable expectation of privacy "in one's unclothed or partially clothed body."  Poe v. Leonard, 282 F.3d 123, 138 (2d Cir. 2002); see also Kyllo v. United States, 533 U.S. 27, 38 (2001) (explaining that the use of thermal-imaging technology to gather information regarding the interior of a home constituted a search because it could reveal, for example, intimate, private details surrounding the "daily sauna and bath" of the "lady of the house").  Because Spencer had a reasonable expectation of privacy in her breasts, they remained her private concerns even though they were exposed.